```
                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION

GARY PRATO; JOANNE C. MCMURRAY,

              Plaintiffs,

vs.                                    Case No.  2:08-cv-883-FtM-29SPC

HACIENDA DEL MAR, LLC a Florida
Limited Liability Company,

              Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment as to Counts I and II of Plaintiffs' Complaint (Docs. ## 37 , 38) filed on July 2, 2010.  Plaintiffs filed a response (Doc. #41) on July 15, 2010.  With the permission of the Court, defendant filed a reply (Doc. #48) on August 11, 2010.  On August 25, 2010, defendant filed a Supplemental Motion and Memorandum for Partial Summary Judgment (Doc. #53) asserting the statute of limitations as an additional ground in support of summary judgment.  Plaintiffs filed a response (Doc. #58) to the supplemental motion on September 21, 2010.

At issue is whether defendant was required to comply with the disclosure and anti-fraud provisions of the Interstate Land Sales Full Disclosure Act 15 U.S.C. § 1701 et seq (ILSFDA or Act).  If not, then the Court would lack subject matter jurisdiction over the state law claims set forth in the Second Amended Complaint and the Counterclaim.

I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000)(*cert. denied* 534 U.S. 815 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Johnson v. Booker T. Washington Broad. Servs., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)). However, "the mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003). A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. Id.

**II.**

On December 9, 2005, Gary Prato and Joanne C. McMurray (plaintiffs) entered into purchase agreements to buy two condominium units from Hacienda Del Mar, LLC (defendant). The units, F-205 and G-306, were sold to plaintiffs pre-construction and would be located in the Hacienda Del Mar Condominium Community

(Hacienda) in buildings F and G, respectively.  (Docs. #26-1, 26-2.)

On June 18, 2008, plaintiffs wrote a letter to defendant seeking rescission of the purchase agreements and a refund of their deposits based upon defendant's violation of the ILSFDA.  (Doc. #26, ¶ 17, Doc. #53, Exh. 1.)  Defendant refused to return the deposits.  (Doc. #26, ¶ 18.)  Defendant contends that it was not required to comply with the ILSFDA because the units sold to plaintiffs were exempt from the provisions of the Act.

On December 2, 2008, Plaintiffs filed this suit.  (Doc. #1).  The Second Amended Complaint consists of five counts.  (Doc. #26.)  Count I alleges violation of the Interstate Land Sales Full Disclosure Act; Count II alleges violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); Count III alleges fraud in the inducement; Count IV alleges violation of the Florida Condominium Act; and Count V alleges breach of contract.  With respect to the ILSFDA, plaintiffs allege that defendant failed to meet the following requirements of the Act: (1) inform plaintiffs that they had a statutory right to revoke the agreements pursuant to § 1703(c); and (2) include language in the agreements in compliance with § 1703(d).  Plaintiffs also allege that defendant included false and conflicting statements in the purchase agreements, prospectus and offering documents in violation of § 1703(a).  (Doc. #26, ¶¶ 13-15.)  Plaintiffs seek both rescission

and damages. Defendant filed a Counterclaim alleging two counts of breach of contract.

Defendant has moved for summary judgment of Counts I and II. Count II, the FDUTPA claim, is based upon violation of the ILSFDA, Count I.[1]

**II.**

The ILSFDA is a remedial statute intended to protect consumers from unscrupulous sales of undeveloped home sites. Kamel v. Kenco/The Oaks at Boca Raton LP, 321 Fed. Appx. 807, 809 (11th Cir. 2008) (quoting Winter v. Hollingsworth Props., Inc., 777 F.2d 1444, 1447 (11th Cir. 1985)). Under the Act, developers of subdivisions must register their projects with the Secretary of Housing and Urban Development and make specified disclosures to a purchaser in advance of his or her signing of the purchase agreement. See 15 U.S.C. §§ 1703, 1704. Additionally, the purchaser's right to these disclosures must be clearly stated in the purchase agreement. 15 U.S.C. §§ 1702(b)-(d). The ILSFDA also includes certain anti-fraud provisions which make it unlawful for a developer to intentionally deceive purchasers. 15 U.S.C. § 1703(a)(2).

---

[1] Because the ILSFDA generally proscribes certain unfair and deceptive trade practices, a violation of the ILSFDA is a violation of the FDUTPA as well. Trotta v. Lighthouse Point Land Co., LLC, 551 F. Supp. 2d 1359, 1367 (S.D. Fla. 2008), rev'd on other grounds, Pugliese v. Pukka Dev., Inc., 550 F.3d 1299 (11th Cir. 2008).

Section 1702 enumerates several exemptions from the ILSFDA. Some exemptions are full exemptions, which exempt the developer from all of the Act's provisions, and some are only partial exemptions. The "two-year exemption" is a full exemption, which exempts the sale of land from ILSFDA if the sale is under a contract obligating the seller to erect a building thereon within a period of two years. 15 U.S.C. § 1702(a)(2); see also Gentry v. Harborage Cottages-Stuart, LLLP, 602 F. Supp. 2d 1239, 1246 (S.D. Fla. 2009). The "100 lot exemption" exempts the sale of land in a subdivision containing fewer than 100 lots. 15 U.S.C. § 1702(b)(1). The "100 lot exemption" is a partial exemption, which exempts the developer only from the registration and disclosure requirements of the Act. 15 U.S.C. § 1703(a)(1). The developer must still comply with the anti-fraud provisions of the Act. 15 U.S.C. § 1703(a)(2); Gentry, 602 F. Supp. 2d at 1246.

These two exemptions may be used in conjunction with one another. Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings Inc., 674 F. Supp. 2d 1344, 1353 (S.D. Fla. 2009). Thus, if a project consists of 123 units, a developer can sell 24 of the units under the two year exemption, and the remaining 99 units would then qualify under the 100 lot exemption. Id. at 1353-54. This "stacking" of exemptions is permissible under the Department of Housing and Urban Development's Guidelines for Exemptions Available

Under the ILSFDA (HUD Guidelines). The HUD Guidelines provide, in relevant part:

> [A] developer of a subdivision containing a total of 129 lots ... qualifies for this exemption if at least 30 lots are sold in transactions that are exempt because the lots had completed homes erected on them. The 30 exempt transactions may fall within any one exemption or a combination of exemptions noted in [24 C.F.R.] § 1710.5(b) through (h)[2] and may be either past or future sales. In the above example, the developer also could qualify if twelve lots had been sold with residential structures already erected on them, nine lots had been sold to building contractors and at least nine lots were reserved for either the construction of homes by the developer or for sales to building contractors. The reserved lots need not be specifically identified. Developers of subdivisions containing more than 99 lots who wish to operate under this exemption must assure themselves that all lots in excess of 99 have been and will be sold in transactions exempt under 24 CFR 1710.5(b) through (h).

61 Fed. Reg. 13596, Part V(a), ¶¶ 2-3.[3]

There must, however, be a legitimate business purpose for "stacking" exemptions; the developer cannot adopt this "method of disposition" for the purpose of evading the ILSFDA. 15 U.S.C. §§

---

[2] These exemptions correspond with the exemptions enumerated in 15 U.S.C. §§1702(a)(2)-(8). Among them are the "two-year exemption" (also known as the "improved lot exemption") and the "sales to builders exemption."

[3] HUD Guidelines, available at: http://www.hud.gov/offices/hsg/ramh/ils/ilsexemp.cfm. The Guidelines state that they are intended to clarify HUD polices and positions with regard to the statutory exemptions, and that they are an interpretive rule and not a substantive regulation. 61 Fed. Reg. 13596, 13601 (1996). As an interpretive agency rule, the Guidelines are entitled to some deference. Reno v. Koray, 515 U.S. 50, 59 (1995).

1702(a) and (b); Gentry, 602 F. Supp. 2d at 1246; First Global Corp. V. Mansiana Ocean Residences, LLC, No. 09-21092, 2010 WL 2163756 (S.D. Fla. May 27, 2010). The threshold for establishing a legitimate business purpose requires some factual evidence demonstrating that the method of disposition has some bona fide, real world objective that manifests a legitimate business purpose. Gentry, 602 F. Supp. 2d at 1246.

### III.

Based on this "stacking" principle, defendant contends that the Hacienda qualifies for both the "two-year exemption" and the "100 lot exemption." The Court agrees.

The Hacienda consists of seven buildings, which were constructed in six phases. (Doc. #37-1.) In Phase I, Defendant constructed two buildings, Building A and Building B. Defendant constructed Building C in Phase II, Building D in Phase III, Building E in Phase IV, Building F in Phase V and Building G in Phase VI. Each building contained 16 condominium units. (Doc. #37-1, ¶ 4.) Thus, Phase I consisted of 32 units, while each of the remaining phases consisted of 16 units each. The total number of units in the Hacienda is 112.

At the time that plaintiffs purchased units F-205 and G-306, defendant had already sold all units constructed in Phases I and

II.[4]  (Doc. #37-1, ¶ 11.)  Thus, as of December 9, 2005, 46 units were sold (32 units in Phase I and 16 units in Phase II).  Those units were sold pursuant to contracts which qualified for the two-year exemption under § 1702(a)(2).[5]  (Doc. # 48.)  The remaining 66 units, including those sold to plaintiffs, qualified for the 100 lot exemption under § 1702(b)(1).  As discussed above, stacking the two exemptions is entirely permissible, if defendant is able to demonstrate a legitimate business purpose for doing so.

---

[4] The time for determining whether a particular project or unit is entitled to one of the statutory exemptions of the ILSFDA is when the buyer purchases the unit. See Grove Towers, Inc. v. Lopez, 467 So. 2d 358, 361 (Fla. DCA 1985)(citations omitted) ("Since the purpose of the act is to protect purchasers against fraudulent land sales schemes, it is only reasonable that the statute require full disclosure before the purchasers sign a contract."); accord Rensin v. Juno-Loudon, LLC, No. 09-1391, 2010 WL 1381546, at *7 (E.D. Va. Mar. 30, 2010) ("When determining whether or not the subdivision is one 'containing fewer than one hundred units,' the number of nonexempt lots in the subdivision should be determined contemporaneously with when the purchaser enters into the purchase agreement for the lot in the subdivision.").

[5] Plaintiff contends that issues of fact exist regarding the sale dates of these units, whether the units were even sold in the first place, and whether the contracts unconditionally guaranteed completion of construction within two years of the contract dates. Defendant has provided the sworn affidavit of its manager, Thomas E. Leiter, stating that the units were sold prior to 2003 (Doc. #37-1) and plaintiffs have provided no counter-affidavit disputing this assertion.  In fact, it appears that plaintiffs purchased one of the first 46 units, in addition to the two units at issue in this case (see doc. #48-1).  The Court has reviewed the example contract attached to defendant's reply and finds that it qualifies for the two-year exemption because it unconditionally guarantees completion of construction within two years of the contract date.

In Double AA, the court found that greater flexibility in marketing and selling the project amounted to a legitimate business purpose. Double AA, 674 F. Supp. 2d at 1355-56 ("Indeed, one of the primary purposes of a for-profit business is to make the greatest possible profit. [The developer]'s ability to have greater flexibility in marketing and construction could generate a significant financial return in the overall project."). This flexibility allowed the developer to save time and money when it came to financing the project, hiring and contracting for labor and materials, and managing the project. Id.

Here, defendant has submitted an affidavit from its manager Thomas E. Leiter stating:

> In marketing and developing Phase ¶I of the Hacienda in 2003, the Developer qualified the Hacienda under the exemption provided for under 15 U.S.C. Sec. 1702(a)(2) commonly known as the ("Two Year Exemption") under the Interstate Land Sales Full Disclosure Act ("ILSFDA"). Qualification under this exemption was done by the Developer for a number of business reasons which included the following:
>
> a. The Two Year Exemption allowed flexibility in deciding when to market and sell the project and when to commence construction. This allowed the Developer to save money, time and manage construction, financing and administrative cost and the employment of contractors, purchase of materials and management personnel.
>
> b. Qualifying the project under the Two Year Exemption was consistent with the fact that the Hacienda was a Phased Condominium in which only Phase I consisting of 32 units was required to be constructed. Initial marketing and sales was limited to Phase I and it was

> determined that construction could be completed within two years from the contract dates.
>
> Following the initial marketing and sales of Phase I, the Developer determined that there was sufficient market demand to construct Phase II consisting of sixteen units. Following the commencement of construction of Phase I, the Developer secured additional financing to allow construction of Phase II. Units in Phase II were also qualified under the Two Year Exemption of the ILSFDA. All sales contracts in Phases I and II were qualified under the Two Year Exemption and required completion of construction within two-years from the date of the contract.
>
> Following commencement of construction and sales in Phases I and II, the Developer decided to offer units for sale in Phase III as it appeared the market demand was sufficient to construct additional Phases.
>
> Commencing with Phase III, there remained sixty-four units to be added to the condominium in Phases III, IV, V and VI. In that there were fewer than 100 remaining units in such Phases, the Developer decided to qualify such remaining units in Phases III, IV, V, and VI under the exemption provided in 15 U.S.C. Sec. 1702(b)(1) commonly known as the ("100 Lot Exemption"). Qualifying the remaining units under the 100 Lot Exemption provided greater flexibility in marketing, sales and construction of Phases III, IV, V, and VI allowing the Developer to save financing and construction costs and manage its labor force in a tight labor market.

(Doc. #37-1, ¶¶ 7-10.)

Plaintiffs have not submitted a counter-affidavit challenging the legitimate business purpose put forth by defendant. Plaintiffs argue that the Court must consider the testimony of witnesses and review market, construction and financial conditions in order to determine whether defendant's purpose is legitimate and related to the advancement of its business. Yet plaintiffs have submitted no

evidence, by affidavit or otherwise, which contradicts or in any way challenges the assertions made by defendant. Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Because plaintiffs have not rebutted defendant's factual assertion of a legitimate business purpose, there is no triable issue of fact concerning whether defendant violated the ILSFDA by stacking the two exemptions. Accordingly, the Court finds that the stacking of the two exemptions was proper.

**IV.**

This, however, does not mean that defendant was exempt entirely from the provisions of ILSFDA. For ease of reference, the Court will restate defendant's alleged violations of ILSFDA as they relate to Counts I and II:

> (1) failing to inform plaintiffs that they had a statutory right to revoke the agreements pursuant to § 1703(c);
>
> (2) failing to include language in the agreements in compliance with § 1703(d);
>
> (3) including false and conflicting statements in the purchase agreements, prospectus and offering documents in violation of § 1703(a).

(Doc. #26, ¶¶ 13-15.)

As discussed above, the "two-year exemption" is a full exemption that relieves defendant from all provisions of the Act,

including the disclosure and anti-fraud provisions. See §§ 1703(a)(1) and (a)(2); Gentry, 602 F. Supp. 2d at 1246. This exemption applied only to the first 46 units sold. The remaining 66 units, including the units sold to plaintiffs, are subject to the 100 lot exemption. That exemption is a partial exemption, which exempts the defendant only from the disclosure requirements, but not the anti-fraud provisions.[6] § 1703(a)(2); Gentry, 602 F. Supp. 2d at 1246; Double AA, 674 F. Supp. 2d at 1353. Therefore, defendant was not required to inform plaintiffs that they had a statutory right to revoke the agreements pursuant to § 1703(c) nor was defendant required to include language in the agreements in compliance with § 1703(d).

Defendant was, however, required to comply with the anti-fraud provisions of the Act pursuant to § 1703(a)(2). Plaintiff alleges that defendant failed to do so by including false statements in the contracts, prospectus and/or offering documents. (Doc. #26, ¶ 15.) Defendant denies this allegation. (Doc. #28.) While there is scant factual support for this allegation in the Complaint, defendant has failed to address it in its motion for summary judgment (Docs. ## 37 , 38), reply (Doc. #48), and supplemental motion for partial summary judgment (Doc. #53). Accordingly, the

---

[6] The "100 lot exemption" falls under § 1702(b) and the only exemptions which relieve the developer of the anti-fraud provisions are those which fall under § 1702(a). See § 1703(a)(2).

Court finds that there is a genuine issue of fact as to whether defendant complied with ILSFDA's anti-fraud provisions under § 1703(a)(2).

## V. Statute of Limitations

In its Supplemental Motion for Partial Summary Judgment (Doc. #53), defendant argues that plaintiffs' rescission claims based on violations of 15 U.S.C. § 1703(c) and § 1703(d) are untimely. Because the Court has granted summary judgment as to those claims, it need not address the statute of limitations issue. The remaining claim for violation of the ILSFDA's anti-fraud provisions (§ 1703(a)(2)(A)-(a)(2)(C)) is subject to the general three-year statute of limitations contained in 15 U.S.C. § 1711. That section provides in relevant part:

> Section 1703(a) violations
>
> No action shall be maintained under section 1709 of this title with respect to–
>
> (2) a violation of subsection (a)(2)(A), (a)(2)(B), or (a)(2)(C) of section 1703 of this title more than three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence.

15 U.S.C. § 1711.

This suit was filed on December 2, 2008, two years, eleven months and three weeks after plaintiffs signed the purchase agreements. Assuming that the date plaintiffs signed the purchase agreements is the earliest possible date they could have discovered

the alleged fraud, the suit is timely. Rescission and damages are an available remedies pursuant to 15 U.S.C. § 1709(a).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Partial Summary Judgement as to Counts I and II of Plaintiff's Complaint (Doc. #37) is **GRANTED IN PART AND DENIED IN PART** as follows: As to the Second Amended Complaint, the motion is granted with respect to violations of the disclosure requirements under sections 15 U.S.C. §§ 1703(c) and (d) of Count I and as incorporated into Count II. The motion is denied with respect to the anti-fraud provisions of § 1703(a)(2) of Count I and as incorporated into Count II.

2. Defendant's Supplemental Motion for Partial Summary Judgement as to Counts I and II of Plaintiff's Complaint (Doc. #53) is **DENIED.**

3. The Clerk of the Court shall withhold entry of judgment pending further order of the Court.

**DONE AND ORDERED** at Fort Myers, Florida, this  18th  day of January, 2011.

*[signature: John E. Steele]*

JOHN E. STEELE
United States District Judge

Copies: Counsel of record